JAMES GARY COOPER *v.* STATE OF MARYLAND

[No. 78, September Term, 1981.]

*Decided March 24, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

PER CURIAM:

"There exists in this State the general rule that a party who produces a witness in court vouches for that witness' credibility and truthworthiness, and no direct attack upon his veracity should be made by the producing party in the absence of surprise, hostility, or deceit." *Poole v. State,* 290

Md. 114, 118, 428 A.2d 434, 437 (1981). In order that we might address two questions concerning the voucher rule, we granted certiorari in the case at bar after petitioner's conviction had been affirmed by the Court of Special Appeals in an unreported opinion. The first question, which was included in the petition for certiorari, was:

Did the trial judge err in failing to give a curative instruction requested by Petitioner's trial counsel that the State is bound by the testimony of its own witnesses when the prosecutor expressly disavowed a portion of the testimony of one of his own witnesses?

To this issue we added, on our own initiative, the following further issue:

Whether the voucher rule should be continued in Maryland?

Upon examination of the record we find that the issues embraced in the grant of certiorari, in which we are interested as a matter of public importance, are not presented on the facts of this case. Consequently, the writ will be dismissed.

On March 4, 1980 the manager of a 7-Eleven Store in Prince George's County had been robbed by a lone bandit who was armed with a handgun. A description of the getaway car led to the arrest, shortly after the robbery, of the three occupants of that car. These were Gerald Andre Smith (Smith), Frederick Ricardo Germany (Germany), and the petitioner, James Gary Cooper (Cooper).

Smith entered a guilty plea and admitted that he was the gunman who had entered the store. Cooper and Germany were tried jointly. Their defense was that they did not know that Smith was going into the store in order to rob. As part of its case, the State called Smith as a witness. Smith testified the gun had been furnished to him by Cooper. The prosecutor then showed Smith a handgun but Smith said it did not look like, and was smaller than, the gun which he had used in the robbery. Later in the trial a police officer

identified the gun previously shown to Smith as the gun recovered from the backseat of the getaway car.

In closing argument, counsel for both defendants emphasized Smith's failure to identify the gun that the prosecutor had obviously expected Smith to say was the weapon used in the robbery. In rebuttal the prosecutor stated that Smith had "spun" him. He cautioned the jury to follow the court's instruction on an accomplice's testimony and then said, "I'm not vouching for Smith's credibility, but I think there are some things that he brought out that are truthful." The State's Attorney then went on to argue that the real issue was whether Cooper and Germany knew in advance that Smith was going to commit robbery in the store.

At the conclusion of this rebuttal, defense counsel approached the bench. Petitioner's counsel stated that she wanted "a curative instruction that the State is bound by the testimony of their own witnesses," and that the prosecutor cannot ask "the jury to disregard and say that he disbelieves part of the testimony." The trial court said it was "going to give an instruction" that "[e]ither side is bound by the uncontradicted and uncontroverted testimony of their witnesses."

There then ensued a colloquy in which the trial judge suggested that he might be "exacerbating" the situation by giving the instruction and that the jury might take the instruction as meaning that the court was "vouching" for Smith's credibility. The bench conference concluded as follows:

> THE COURT: . . . . I think at this point to undo it would aggravate the situation. If you want me to, I will [give the instruction], but I would suggest it's probably better to let it go at this point. It's so insignificant in the totality —
>
> [GERMANY'S COUNSEL]: Well, I'll withdraw it, if the Court feels it's muddying up the record.
>
> THE COURT: I'm worried about muddying up their feelings. To say that the State is bound by the uncontradicted testimony of their witness almost

sounds like it bolsters — if it were me, I'd say, just let it go. If it were a significant point, I could see it, but —

[GERMANY'S COUNSEL]: Okay. I think they got the picture anyway.

THE COURT: Okay.

At this point the record reflects that counsel returned to the trial tables.

Germany's attorney expressly withdrew the request for the instruction, which the trial court was prepared to grant if counsel still desired it. Petitioner's attorney clearly concurred in the tactical decision made by Germany's attorney. Petitioner's attorney returned to the trial table without in any way indicating that the instruction should nevertheless be granted at the petitioner's request, even if Germany had withdrawn his request. The matter then went to the jury, which convicted.

Under these circumstances the request for an instruction based on the voucher rule was withdrawn by the petitioner as effectively as it was withdrawn by the codefendant.

*Writ of certiorari dismissed.*
*Costs are not reallocated.*